IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Case No. 1:24cr172 |
| ADJOH DORCAS MANOU EPSE ASSOKO, | Hon. Michael S. Nachmanoff |
| *Defendant.* | |

**<u>Sentencing Memorandum</u>**

Within days of her conviction in this case, Ms. Manou had already accepted responsibility, as well as the jury's verdict. She began exploring two possible avenues to returning her daughter to the United States: 1) through her sister, living in Paris, and 2) through the Ivoirian Embassy in Washington D.C. First, Ms. Manou contacted her sister about traveling to Cote d'Ivoire to pick up her daughter and then flying with her to the United States. Ms. Manou coordinated with counsel to have the government provide a letter of safe passage for her sister and daughter into the country. (Her sister was concerned that in bringing Ms. Manou's daughter to the United States, the sister might have risked some type of accessory or conspiracy liability.) *See* Exhibit 1, Emails from Ms. Manou to counsel.

Separately, Ms. Manou reached out to the Ivorian Embassy and requested their assistance in returning her daughter to the United States. Ms. Manou's repeated contacts with the Ambassador from Cote d'Ivoire and his staff culminated in a meeting at the embassy with undersigned counsel and a supervisor at the

United States Attorney's Office. At the meeting, the Ambassador indicated he would need a written request from undersigned counsel for the Embassy to get involved. Counsel confirmed Ms. Manou's intent and emailed the Ambassador the formal request on October 16, 2024. Exhibit 2, Email from counsel to Ivoirian Ambassador.

Two weeks following the trial, and as these efforts to return her daughter were still playing out, Ms. Manou went to family court in Montgomery County, Maryland. There, the Court held her in contempt, and she was incarcerated from October 15, 2024, through October 18, 2024. Presentence Report ("PSR") at ¶44. In the course of these proceedings, Ms. Manou directed her family in Cote d'Ivoire to transfer custody of her daughter to Mr. Assoko's family – which they did on October 16, 2024. *See* Exhibit 3, Email from Nanci Bransom, Attorney for John Assoko.

During this period, as well as in the week afterward, Ms. Manou signed numerous letters authorizing Mr. Assoko's friends and family to leave Cote d'Ivoire with her daughter – as a number of possible chaperones fell through. On October 25, 2024, just over three weeks after her conviction, Ms. Manou's daughter was safely in the United States and in Mr. Assoko's custody. PSR at ¶45.

Given these circumstances, as well as the reasons outlined below, Ms. Manou requests a sentence of time served.

1. Procedural Posture

Ms. Manou was arrested at Dulles Airport on June 26, 2024. PSR at ¶37. She was released from custody five days later on July 1, 2024. Ms. Manou was

convicted by a jury on October 1, 2024, after a two-day trial. ECF No. 57. Sentencing is scheduled for January 30, 2025, at 10:00 am.

2. Personal History

As is clear in the Presentence Report, there is no doubt that Ms. Manou is a very accomplished woman who has focused her talents on providing for her family and giving back to the community. PSR at ¶¶75-77, 93-106. As her children tell the Court in Exhibit 4 (Defense Mitigation Video), Ms. Manou has been laser-focused on providing opportunities for her children that she did not have. Her friends and family echo this same sentiment, as well as detailing her sustained efforts to help the less fortunate, particularly in Africa. *Id*; *see also* PSR at ¶¶93, 94, 98.

Ms. Manou's conduct in this case occurred in a relationship that was marked by conflict and tension. In August 2023, Mr. Assoko and Ms. Manou's daughter was born after a difficult pregnancy. Within several months, the relationship between Mr. Assoko and Ms. Manou disintegrated, though there were moments of compassion and cordiality. The evidence at trial (through text messages) showed both Ms. Manou and Mr. Assoko's earnest attempts to discuss issues in the relationship – as well as caustic comments about the other's role in their conflict. Ms. Manou sincerely did not want to have their baby at a busy police station twice a weekend – but she also frustrated many other attempts at weekend visitation where police stations were not involved. As the relationship became more contentious, Ms. Manou frustrated more – and then all – of Mr. Assoko's visitation rights. At certain points, both parties were not forthcoming with each other or the

family court about their plans to leave the greater D.C. area – though only Ms. Manou took things so far as to leave the country with their daughter.

Ultimately, Ms. Manou brought their daughter back to Cote d'Ivoire (where Mr. Assoko, Ms. Manou, and their daughter were all citizens) without telling Mr. Assoko until her departure. Mr. Assoko wanted to stay in the United States and did not return to Cote d'Ivoire after learning that Ms. Manou and their daughter had returned. (Unbeknownst to Ms. Manou or the family court judge, Mr. Assoko was pursuing employment and a visa at a school in San Francisco. This pending visa application was the reason given for Mr. Assoko not returning to Cote d'Ivoire.) Mr. Assoko received both a visa and an employment offer in San Francisco, and their daughter is now living with him there.

Going forward, custody of their daughter will be navigated under the microscope of the courts – both in the United States and in Cote d'Ivoire, where Ms. Manou filed for divorce upon her arrival in May 2024. Defense Trial Exhibits 3, 3-A. (Available at ECF No. 56-3.)

3. Comparison Cases and Collateral Consequences

One possible outcome for parental kidnapping cases is the return of the child or resolution in other courts in exchange for dismissal of the charges. (*See, e.g., United States v. Mirzoeva*, 1:10cr480). In this case, the government did offer to dismiss the charges against Ms. Manou in exchange for returning her daughter to the United States; Ms. Manou instead chose to exercise her right to a trial. Immediately after her conviction, she proactively began two separate processes to

return her daughter to the United States. When asked to sign paperwork regarding her daughter's return, Ms. Manou repeatedly signed all necessary documentation – understanding that temporary full custody would go to Mr. Assoko. As a result, after trial, her daughter was returned quickly to the United States and is now living with Mr. Assoko in California.

The distinction between the cases of dismissals and Ms. Manou's case is that she did not plead guilty, though she has facilitated the return of her daughter to Mr. Assoko.

As a result of her choice to go to trial, she faces a plethora of consequences. First and foremost, she lost custody of her daughter, whom the Montgomery County Family Court placed in the full custody of Mr. Assoko. (Exhibit 5, Montgomery County Family Court Order). The Family Court Order granted Ms. Manou supervised visits on one Saturday each month and requires that Ms. Manou pay for any and all travel, as well as supervision, required for the visits. *Id.*

Such costs are difficult for Ms. Manou to manage. Ms. Manou lost her job as a result of her conduct – and the subsequent prosecution and conviction in this case. As a result, she no longer has an income and has been living off the assistance of family in Cote d'Ivoire while she remains in the United States under Pretrial supervision. Ms. Manou's visa in the United States was tied to her employment in the United States with the World Bank. Without that employment, it appears that

she does not have legal status in the United States, making finding employment nearly impossible.[1]

Over an extraordinarily difficult three months, Ms. Manou has had to watch in slow motion as the effects of her actions catch up to her older children. All three were in the United States through her visa. As she was losing her status, she attempted to transition her children to student visas, however, she has been unable to pay their tuition as well. As a result, her older children have all returned to Cote d'Ivoire. While many parts of the last three months have been difficult, there is little comparison for the heartbreak in telling her children that her choices have derailed their education and separated them from their friends and the home they have known for the past 7 years.

Additionally, she will now forever have a felony conviction in the United States, which will almost certainly prevent her from acquiring a visa (and thus, traveling) to the United States in the future. This will make visitation with her and Mr. Assoko's daughter very difficult, as their daughter and Mr. Assoko appear to be living in the United States for the foreseeable future.

4. <u>The guidelines as calculated in the PSR are not supported by caselaw where courts have previously considered the disputed enhancements.</u>

Ms. Manou disputes the current calculation of the sentencing guidelines, in particular, the enhancement applied for substantial interference with the administration of justice under USSG § 2J1.2(b)(2). The stated justification for this

---

[1] Counsel anticipates filing a supplemental memorandum confirming these conclusions after speaking with a retained immigration expert.

enhancement is that Ms. Manou's criminal conduct led to the unnecessary expenditure of substantial government or court resources. PSR at ¶54. The caselaw is clear that the instant facts are not of the nature that courts consider justification for the enhancement.

First, the PSR is devoid of any evidence of an expenditure of substantial resources as a result of Ms. Manou's crime, specifically taking her daughter out of the country in violation of the Montgomery County Family Court Order. To justify the enhancement, the PSR cites two events that occurred subsequent to Ms. Manou's crime, as well as multiple events occurring well before the crime occurred.

Of the two events occurring after the crime, the PSR first points to the family court hearing (which Ms. Manou participated in via video conference) on Mr. Assoko's emergency motion for sole custody. PSR at p. 24. The PSR does not cite any specific expenditures associated with the hearing, which was on Ms. Manou's violation of the family court order – a violation that was an element of the charged offense. Every prosecution under 18 U.S.C. § 1204 requires the violation of a court order: a subsequent hearing on that violation seems unavoidable in such a case, as opposed to evidence of aggravated conduct. Moreover, there is no allegation of "substantial expenditure of court resources."

The second event cited by the PSR as justification for the enhancement is the post-arrest interview of Ms. Manou by the FBI, in which (without counsel present) Ms. Manou answered some, but not all, of the FBI agents' questions. The interview cannot justify the enhancement for two reasons. Most importantly, the PSR does

not allege any "substantial expenditure of government or court resources" in connection with the interview – the agents were simply conducting a post-arrest interview.  Second, Ms. Manou had Fifth Amendment rights at the time, and any enhancement based on her not fully answering law enforcement questions would be punishment for the exercise of her constitutional rights.  The guidelines explicitly discourage enhancements in these circumstances.  *See, e.g.,* USSG, § 3C1.1, n. 2, ("This provision is not intended to punish a defendant for the exercise of a constitutional right."). The wording of the PSR's justification is more suggestive of an enhancement for obstruction of justice under USSG § 3C1.1, however, neither that section nor its commentary indicate an enhancement for not fully answering the questions of law enforcement. Neither the government nor Probation contends that Ms. Manou's conduct justifies the obstruction enhancement in this case. (Providing false information to law enforcement can trigger the obstruction enhancement, though, again, that is not alleged in this case.)

In the few cases where courts have considered the question of "substantial resources", the facts have been quite different – and have shown "substantial resources".  For example, in *United States v. Leung*, 360 F.3d 62, 67 (2d Cir. 2004), the government had to expend substantial resources where, to avoid prosecution, the defendant concocted a scheme to convince the Court and the government that he had died in the September 11, 2001 attack in New York City – and "numerous Marshals had to spend significant time consulting with the Law Department, the Missing Persons Unit, and [a business that lost hundreds of employees in the

attack] as well as conducting interviews with family members, former employers, and others" to identify the fraud. In *United States v. Harrington*, 82 F.3d 83, 86–87 (5th Cir. 1996), *as modified on reh'g* (Apr. 17, 1996), the court found substantial resources had been required where, subsequent to the defendant's plea, law enforcement had to surveil the defendant, recruit informants, and set up a sting operation to identify the defendant's attempts to bribe witnesses in a scheme to rescind his plea agreement. Finally, in *United States v. Tankersley*, 296 F.3d 620, 623 (7th Cir. 2002), the defendant violated the district court's preliminary injunction, and as a result, the government and the receiver expended substantial resources investigating the defendant and securing his assets, including many weeks of work that went into tracking down and determining what happened to the defendant's yacht.

Plainly, there is no comparison between these cases of true "substantial resources" and Ms. Manou's case – particularly where the PSR cites no expenditure to justify the enhancement. Correcting this error would result in an offense level of 12 and a guidelines range of 10-16 months.[2]

Also, for the reasons listed in the final PSR, Ms. Manou disputes the PSR's denial of her credit for accepting responsibility. Correcting these two errors would result in an offense level of 10 and a guidelines range of 6-12 months. This is more reflective of the cases in this jurisdiction that resemble Ms. Manou's conduct. For

---

[2] In the response to Ms. Manou's objection at page 24 of the PSR, the enhancement is labeled as two points. The PSR correctly cites the enhancement as three points in ¶54.

example, in *U.S. v. Wenjing Liu*, 1:14cr372 (E.D.VA. 2015), the Court sentenced the defendant to 6 months' incarceration on 6–12-month guidelines. However, in that case, the defendant's flight was turned around after exiting U.S. airspace; the defendant did not voluntarily facilitate the return of the child, as Ms. Manou has done here.

5. <u>The Statutory purposes of sentencing cannot justify a sentence beyond a felony conviction and time served.</u>

Congress has articulated four allowable purposes of sentencing. 18 U.S.C. § 3553(a)(2).

First, the Court must consider what just punishment of the crime requires. Through her conduct in this case, Ms. Manou has brought upon herself the worst type of punishment: losing custody of her daughter; losing the ability to stay or return to the United States; disrupting her older children's educations and communities; and losing her job. She will suffer those punishments for years, and possibly, the rest of her life.

The Court should also consider the fact that Probation has been informed that an immigration detainer will likely be lodged against Ms. Manou if she in incarcerated. PSR at ¶81. As a result, any sentence this Court imposes will be followed by a period of administrative detention. Moreover, if this Court were to sentence Ms. Manou to a longer period of incarceration, she would be ineligible or less able to access many of the services the Bureau of Prisons offers. As a "deportable alien", Ms. Manou will be barred from assignment to minimum security prisons. *See* Federal Bureau of Prisons Program Statement 5100.08:  Inmate

Security Designation and Custody Classification, Ch.5, p.9. (Sept. 12, 2006).[3] For the same reason, she will only be eligible to participate in occupational education programs if BOP "resources permit after meeting the needs of other eligible inmates," which is almost certain not to occur. *See* Federal Bureau of Prisons, Program Statement 5353.01: Occupational Education Programs, at 3 (Dec. 17, 2003).[4]

The second permissible justification for sentencing is deterrence, both general and specific. If persons considering international parental kidnapping came upon Ms. Manou's case, they would see her conduct resulting in a total loss: loss of her child, loss of her job, and loss of her immigration privileges in this country – likely forever. They would see that she had the option to resolve the case with a dismissal and wonder why she ever went forward with a trial. With regard to specific deterrence, Ms. Manou will almost certainly never be in this country again. It is uncertain when she will ever see her youngest daughter again. Ms. Manou has filed for divorce in Cote d'Ivoire, so that if Mr. Assoko were to return to Cote d'Ivoire with their daughter, he would enter with custody – and the custody would subsequently be decided in an Ivoirian court, where again, Ms. Assoko would enter proceedings with the stain of a parental kidnapping conviction on her record.

---

[3] Available at: [Program Statement 5100.08, Inmate Security Designation and Custody Classification (bop.gov)](bop.gov)

[4] Available at: [Program Statement 5353.01, Occupational Education Programs (bop.gov)](bop.gov)

Third, incapacitation is not a sufficient justification where Ms. Manou poses no further threat to the public or to Mr. Assoko and their daughter. She will ultimately be deported from the United States, and before her deportation, any visitation with her daughter must be supervised by court-approved personnel.

Fourth, given Ms. Manou's education, employment history, and the absence of any substance abuse history, incarceration cannot be justified by programming available in BOP institutions.

## Conclusion

The statutory purposes of sentencing do not justify a sentence of incarceration. Moreover, Ms. Manou's lack of immigration benefit in the United States means she will likely leave the United States as soon after sentencing as she is allowed. While supervision is discouraged by the guidelines in such circumstances (*see* USSG § 5D1.1(c)), Ms. Manou does not oppose supervision to hold her accountable for complying with both immigration law and family court orders during any time she resides in the United States.

Dated: January 8, 2024        By:    _____/s/_____

                                     Nathaniel Wenstrup
                                     Assistant Federal Public Defender
                                     Virginia State Bar No. 96324
                                     1650 King Street, Suite 500
                                     Alexandria, VA 22314
                                     Nate_Wenstrup@fd.org
                                     (703) 600-0825 – direct